## PEOPLE v CODDINGTON

Docket No. 108282. Submitted December 4, 1990, at Lansing. Decided
April 16, 1991, at 9:25 A.M. Leave to appeal sought.

Jesse L. Coddington was convicted of first-degree murder, second-
degree murder, felonious assault, and three counts of possession
of a firearm during the commission of a felony, and was
acquitted of unlawfully driving away an automobile and a
related felony-firearm charge following a jury trial in the
Oakland Circuit Court, Robert L. Templin, J. He was sentenced
to imprisonment for life without parole for the first-degree
murder conviction, life for the second-degree murder convic-
tion, two to four years for the felonious assault conviction, and
three consecutive two-year terms for the felony-firearm convic-
tions. The defendant appealed, raising several claims.

The Court of Appeals held:

The defendant's conviction of second-degree murder is va-
cated because the trial court's failure to instruct the jury with
regard to voluntary manslaughter was error. The case is re-
manded for the entry of a judgment of conviction of voluntary
manslaughter and for resentencing or, if the prosecutor
chooses, retrial of the second-degree murder charge. In all
other respects, the convictions and sentences are affirmed.

1. The examining magistrate did not abuse his discretion in
denying the defendant's motion for a continuance of the prelim-
inary examination. The defendant failed to show any prejudice
resulting from the denial of this motion, grounded on a claim
that defense counsel had been unable to prepare for the prelim-
inary examination.

2. The examining magistrate did not abuse his discretion in
binding over the defendant for trial on two counts of open
murder, felonious assault, unlawfully driving away an automo-
bile, and four counts of felony-firearm. The binding over was
supported by the evidence.

3. The trial court did not err in denying the defendant's

REFERENCES

Am Jur 2d, Homicide §§ 263, 439, 525; Trial § 305; Witnesses §§ 88,
89, 484, 526.
Homicide: presumption of deliberation or premeditation from the
circumstances attending the killing. 96 ALR2d 1435.

pretrial motions for dismissal of the charges of first-degree murder, felonious assault, and unlawfully driving away an automobile. These motions merely reiterated the defendant's claim that insufficient evidence of these offenses was presented at the preliminary examination.

4. The trial court's admission of evidence of the defendant's prior conviction of unarmed robbery neither had a chilling effect on his right to testify nor was in violation of MRE 609(c). The defendant did, in fact, testify on his own behalf; the trial in this case was within ten years of his release from the confinement imposed for the prior conviction, and the probativeness of this evidence was not outweighed by its prejudicial effect.

5. The trial court did not abuse its discretion in concluding that a five-year-old child witness had sufficient capacity or sense of obligation to testify truthfully or understandably so as to determine him competent to testify at trial.

6. The trial court did not abuse its discretion in admitting photographs and videotape of the crime scene and the body of one of the slain victims. The photographs and videotape were relevant to the issue of premeditation and deliberation and also aided the jury in understanding the testimony of the witnesses.

7. The trial court did not err after the close of the prosecutor's case in chief in denying the defendant's motions for dismissal of the charges of first-degree murder, felonious assault, unlawfully driving away an automobile, and the attendant felony-firearm charges. The trial court properly determined that a rational trier of fact could have found that the essential elements of the crimes charged were proven beyond a reasonable doubt.

8. The prosecutor's comments during the opening statement and closing argument and his presentation at closing argument of exhibits already admitted did not deny the defendant a fair trial.

9. The trial court did not err in denying the defendant's request for jury instructions with regard to self-defense and intoxication. However, the trial court did err in failing to instruct the jury with regard to voluntary manslaughter. The error with respect to the first-degree murder conviction was harmless in view of the jury's rejection of the charge on which it was instructed, second-degree murder. The error with respect to the second-degree murder conviction, however, was not harmless because the jury could have properly concluded that the shooting was done in the heat of passion. The second-degree murder conviction must be vacated and the case remanded for

the entry of a judgment of conviction of voluntary manslaughter and resentencing, unless the prosecutor elects to have the voluntary manslaughter conviction vacated and the defendant retried on the second-degree murder charge.

10. The defendant was not denied a fair trial by the totality of the errors he claimed because the allegations of error had little merit.

11. Resentencing for the convictions other than second-degree murder is not required. The trial court responded to claimed inaccuracies in the presentence report and made the requested corrections.

12. The defendant was not denied the effective assistance of counsel. A disagreement between the defendant and his counsel regarding counsel's questioning of a witness was a matter of trial strategy which will not be second-guessed. The defendant suffered no prejudice from counsel's failure to inform the trial court that some jurors were reading newspapers in light of the jurors' statements that they refrained from reading articles regarding the defendant's trial. The defendant also suffered no prejudice from counsel's failure to inform the trial court of a supposed encounter between a juror and the police officer in charge of the defendant's case. The person who observed the encounter mistook a prosecuting attorney for a juror.

Affirmed in part, reversed in part, and remanded.

1. HOMICIDE — OPEN MURDER — PREMEDITATION AND DELIBERATION — PRELIMINARY EXAMINATION.

Evidence of premeditation and deliberation is not required to be presented at a preliminary examination in order to bind over a defendant for trial of a charge of open murder (MCL 767.71; MSA 28.1011).

2. EVIDENCE — PRIOR CONVICTIONS — COURT RULES.

Evidence of a witness' prior conviction is inadmissible if more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later (MRE 609[c]).

3. WITNESSES — CHILDREN — COMPETENCY.

A child witness is competent to testify where the trial court determines that the child has sufficient capacity or sense of obligation to testify truthfully or understandably; a subsequent showing of the child's inability to testify truthfully reflects on credibility, not competency (MCL 600.2163; MSA 27A.2163; MRE 601).

4. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBER-
      ATION.

   The premeditation and deliberation necessary for first-degree
      murder may be inferred from the facts and circumstances
      established on the record; premeditation may be established
      inter alia by the previous relationship between the defendant
      and the victim; the defendant's actions before and after the
      crime; and the circumstances of the killing itself, including the
      weapon used and the location of the wound inflicted.

5. CRIMINAL LAW — PROSECUTORIAL COMMENT.

   A prosecutor during closing argument properly may ask the jury
      to view the defendant's testimony as untruthful.

6. HOMICIDE — VOLUNTARY MANSLAUGHTER — JURY INSTRUCTIONS.

   Voluntary manslaughter is a cognate lesser included offense of
      murder, and a jury instruction for it must be given when
      requested and supported by the evidence.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *Richard Thompson,* Pros-
ecuting Attorney, *Michael J. Modelski,* Chief, Ap-
pellate Division, and *Graham K. Crabtree,* Assis-
tant Prosecuting Attorney, for the people.

*Gerald M. Lorence,* for the defendant.

Before: HOOD, P.J., and WEAVER and MARILYN
KELLY, JJ.

PER CURIAM. Following a jury trial, defendant
was convicted of first-degree murder, MCL 750.316;
MSA 28.548, second-degree murder, MCL 750.317;
MSA 28.549, felonious assault, MCL 750.82; MSA
28.277, and three counts of possession of a firearm
during the commission of a felony, MCL 750.227b;
MSA 28.424(2).[1] He was sentenced to mandatory
life imprisonment without parole for the first-de-
gree murder conviction, life imprisonment for the
second-degree murder conviction, two to four years
for the felonious assault conviction, and three

[1] Defendant was acquitted of unlawfully driving away an automo-
bile, MCL 750.413; MSA 28.645, and the attendant felony-firearm
charge.

consecutive two-year sentences for the felony-fire-arm convictions. Defendant appeals as of right.[2]

I

The convictions arose from the shooting deaths of Jean Coddington (defendant's sister-in-law) and Julie Mendoza (Jean's sister) and the assault of Mary Coddington (defendant's mother). The crimes occurred in the early morning hours of May 7, 1987, at the home of Mary and Chester Coddington. At the time of the shootings, several people resided at the Coddington home, including Mary and Chester; their son, Michael, and his wife, Jean Coddington, and children, Michael and Margaret Ann; and Julie Mendoza and her son, Christopher.

Defendant had been involved in a relationship with Julie Mendoza for a few months before the shootings. Julie had become pregnant, and although the point was disputed, defendant reputedly wanted her to have an abortion. In time, the pregnancy became a point of contention between the two.

On the morning of the shootings, defendant arrived at his parents' house between 3:00 and 3:30 A.M., well after everyone had retired for the night.[3] An argument over the expected baby ensued, and defendant began to physically and verbally assault Julie. Awakened by the argument, defendant's mother, Mary, and Jean Coddington tried to restrain defendant and assist Julie. Jean was struck in the mouth by defendant, but Mary was able to move defendant away from Julie's bedroom. Mary went to get a washcloth for Jean

---

[2] We have rearranged and consolidated defendant's arguments on appeal.

[3] Michael Coddington, defendant's brother, was not home when these events transpired.

while Chester came down to get defendant under control. Shots were heard coming from the bedroom. Defendant was seen backing out of the room with what appeared to be a gun. The children testified that they saw defendant shoot Julie first and then Jean.

As defendant retreated from the bedroom, he threatened to shoot both his parents if they did not get out of his way. He went to the kitchen, took his mother's car keys, and left. When the police arrived, they found Julie lying on the bed, gasping and twitching, while Jean was on the floor between the bed and the dresser. There was still a cloud of gun smoke hovering near the ceiling. Mary indicated to the police that defendant had shot both women, threatened her, and left in her car.

The medical examiner testified that Julie Mendoza's autopsy indicated that she had been shot from a distance. The first bullet entered near the left ear and came out of the top of her head. This wound corresponded to the bloodstains found on the wall just above the head of the bed. The second shot was also to her head and was a "keyhole" wound, causing only a single defect, and corresponded to stains and a bullet hole on her pillow.

Jean Coddington's autopsy indicated that she also sustained two gunshot wounds to the head. One wound had extensive gunpowder soot and stippling[4] at the entrance, leading the medical examiner to conclude that the gun had been fired within six inches of her head but not in contact with it. Jean's other wound was caused when a bullet grazed the top of her head, leaving stippling, but no soot, around the wound. The absence

---

[4] Stippling consists of small abrasions on the skin caused by pieces of gunpowder.

of soot indicated that the gun was 6 inches to 2½ feet from her head when fired.

A blackish soot deposit was discovered at the base of Jean Coddington's left thumb. On the basis of test firings, it was believed that Jean had her hand on or near the barrel of the gun when it was discharged. The medical examiner also concluded that Jean was probably standing when first shot, and most likely struggling with her assailant.

II

Defendant contends that the examining magistrate abused his discretion in denying defendant's motion for a continuance brought before the start of his preliminary examination on the basis of defense counsel's inability to prepare. Our review of the record reveals that the magistrate did adjourn the preliminary examination for 1½ hours and then only entertained the direct examination of Mary Coddington; defense counsel was not required to cross-examine this or any other witnesses on the date in question. Following the conclusion of Mary Coddington's direct examination, the preliminary examination was adjourned and it did not resume until almost two weeks later. We note that defense counsel had previously discussed the case with defendant and had access to the police report. Defendant has not demonstrated any prejudice of any kind from the denial of the continuance. Under these circumstances, we conclude that the magistrate did not abuse his discretion in denying defendant's motion for a continuance. See *People v Wilson,* 397 Mich 76, 80; 243 NW2d 257 (1976); *People v Sinistaj,* 184 Mich App 191, 201; 457 NW2d 36 (1990).

III

Defendant also challenges the sufficiency of the

evidence presented at the preliminary examination to bind him over on two counts of open murder, one count of felonious assault, one count of unlawfully driving away an automobile (UDAA), and four counts of felony-firearm. Defendant also claims that the trial court erred in denying his pretrial motions to dismiss the charges of first-degree murder, UDAA, and felonious assault.

A

A defendant must be bound over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant was the perpetrator. MCL 766.13; MSA 28.931; *People v Gonzalez,* 178 Mich App 526, 530; 444 NW2d 228 (1989). At this stage, the prosecutor is not required to prove each element beyond a reasonable doubt. *Id.* However, there must be some evidence from which these elements may be inferred. *People v Greenberg,* 176 Mich App 296, 306; 439 NW2d 336 (1989). Thus, circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify a bindover. *People v Drayton,* 168 Mich App 174, 176; 423 NW2d 606 (1988). On appeal, we will not substitute our judgment for that of the examining magistrate unless an abuse of discretion is apparent. *People v Talley,* 410 Mich 378, 385; 301 NW2d 809 (1981).

1. OPEN MURDER.

On appeal, defendant claims that because there was no evidence of premeditation or deliberation it was improper to bind him over on the open murder charges, which encompass first-degree murder. We disagree.

Relying in part on *People v Johnson,* 427 Mich 98; 398 NW2d 219 (1986), the prosecutor argued that it was not necessary to present evidence of premeditation and deliberation at the preliminary examination when charges of open murder are brought pursuant to MCL 767.71; MSA 28.1011. In *Johnson,* Justice Boyle opined that proof of these elements was not required to bind a defendant over for trial. Justice Boyle explained:

> Neither statute nor case law requires specification of the degree of murder at a preliminary examination where open murder is charged in the information. Indeed, at common law, there was no specification of degree of murder because all unexcused and unjustified homicides committed with malice were murder punished by death. Perkins, Criminal Law (2d ed), p 88. Specification of degree is a legislative innovation used to distinguish between those murders meriting the harshest punishment and those murders meriting a less severe punishment. *Id.,* pp 88-89. MCL 767.44; MSA 28.984 simply validates simplified short-form informations for the charging of various crimes. The "open murder" statute, MCL 767.71; MSA 28.1011, recognizes that murder is a single offense and that, at the *informational* stage, no specification of degree is required. The information occurs after and depends upon the bindover for the possible charges. MCL 767.45; MSA 28.985 requires that an information contain merely "[t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged . . . ." MCL 767.71; MSA 28.1011 provides that an indictment or information charging murder need only set forth the "charge that the defendant did murder the deceased . . . ."
>
> The meaning of the "open murder" charge in Michigan statutory criminal procedure is that no evidence of premeditation and deliberation need be

adduced at the preliminary examination. The preliminary examination provides the parameters of the information which may be filed by the prosecution. Since MCL 767.71; MSA 28.1011 does not require specification of first- or second-degree murder in the information, it is a reasonable assumption that the Legislature had no intention of requiring proof of premeditation and deliberation at the earlier stage of the preliminary examination. No statute makes such a requirement. The nature of the process is from general to specific, not from specific to general. A requirement of specification of degree at the preliminary examination stage would make the provisions of MCL 767.71; MSA 28.1011 for an open murder charge at the information stage totally meaningless. [427 Mich 107-109. Emphasis in original.]

Justices BRICKLEY and RILEY concurred with this opinion. Justice WILLIAMS wrote a separate opinion in which he indicated his specific concurrence with Justice BOYLE's opinion regarding the sufficiency of the evidence of premeditation and deliberation at the preliminary examination, and concluded by stating that he concurred "generally with the remainder of Justice BOYLE's opinion, particularly with regard to defendant's constitutional arguments." 427 Mich 118-120. This ambiguous closing comment by Justice WILLIAMS has led at least one panel of this Court to conclude that it is still unclear whether such proof is required. See *Gonzalez, supra,* p 531.

Upon review, we find Justice BOYLE's opinion persuasive and, for the reasons expressed in that opinion, hold that the elements of premeditation and deliberation are not required elements for which evidence must be presented at a preliminary examination in order to bind a defendant

over for trial on open murder charges.[5] Therefore, we conclude that no abuse of discretion resulted in this case when the magistrate bound defendant over on these charges.

## 2. FELONIOUS ASSAULT.

Defendant next claims that there was insufficient evidence to bind him over for the alleged assault of his mother, Mary Coddington. The elements required to establish felonious assault are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable fear or apprehension of an immediate battery. *People v Crook,* 162 Mich App 106, 107; 412 NW2d 661 (1987).

We have reviewed the record and conclude that the prosecutor presented sufficient evidence on each of these elements. The magistrate was not required to accept Mary Coddington's testimony that an assault did not occur, especially where there was evidence from other sources indicating the contrary. We find no abuse of discretion in the magistrate's decision to bind defendant over on this charge.

## 3. UDAA.

We note initially that defendant was ultimately acquitted of this charge and the attendant felony-firearm charge; thus we are unable to offer him any relief. Regardless, our review of the prelimi-

---

[5] Regardless, our review of the preliminary examination proceedings leads us to conclude that sufficient evidence was presented on these elements to justify binding defendant over on the murder charges. Additionally, we note that defendant was actually convicted of second-degree murder for the death of his girl friend, Julie Mendoza. Consequently, his claim that the magistrate abused his discretion in binding him over when evidence of premeditation and deliberation was lacking is moot because he was acquitted of first-degree murder. See *People v Blackburn,* 135 Mich App 509, 521; 354 NW2d 807 (1984).

nary examination leads us to conclude that suffi-
cient evidence was presented through the testi-
mony of Officer Brandt that Mary Coddington had
initially stated that defendant had stolen her car.

### 4. FELONY-FIREARM.

Again, defendant was acquitted of the felony-
firearm charge arising out of the UDAA charge and
thus no remedy could be afforded by this Court. In
any event, defendant was properly bound over on
the four underlying offenses and sufficient evi-
dence was presented to properly bind him over on
four counts of felony-firearm on the basis of testi-
mony that he committed the offenses while know-
ingly in possession of a firearm.

### B

Before trial, defendant moved to "dismiss" the
charges of first-degree murder, felonious assault,
and UDAA. The motions were all denied. On appeal,
defendant claims that the denial was an abuse of
discretion. We disagree.

We have reviewed defendant's arguments and
conclude that he has merely reiterated his claim
that insufficient evidence was presented at the
preliminary examination. Because we have al-
ready determined that the prosecution presented
satisfactory evidence to bind him over for trial on
all counts, we likewise conclude that the trial
court did not err in denying defendant's motions to
dismiss.

### IV

Before trial, defendant also moved to suppress
evidence of his 1974 conviction for unarmed rob-
bery, but the trial court denied his request. Never-
theless, defendant testified in his own behalf,

claiming that the shootings were accidental.[6] Therefore, we reject defendant's argument on appeal that the trial court's denial had a chilling effect on his right to testify.

We also reject defendant's argument that under *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988), the evidence of his 1974 conviction was inadmissible because the conviction was more than ten years old. MRE 609(c) provides that evidence of a prior conviction is inadmissible if "more than ten years has elapsed since the date of the conviction *or* of the release of the witness from the confinement imposed for that conviction, whichever is the *later* date." (Emphasis added.) Defendant was released within ten years of the trial in this case and thus evidence of his prior conviction was not inadmissible for this reason.

Defendant also claims that the prior conviction was not indicative of his veracity, that its probativeness was outweighed by its prejudicial effect, and that it led the jury to perceive defendant as a "bad man." Our review of the entire record leads us to conclude to the contrary. We note that if the jury was led to perceive defendant as a "bad man," it would be because of the heinous crimes committed by him and certainly would not be because of a fourteen-year-old conviction. We also reject defendant's claim that the use of the prior conviction prejudiced him. Our review reveals that defendant actually relied on his prior conviction, confinement, and escape while on furlough to explain why he fled the home after the shootings. In sum, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress evidence of his unarmed robbery conviction.

---

[6] This version was also supported by the testimony of four-year-old Margaret Ann Coddington, Jean Coddington's daughter.

V

Defendant's next argument is that the trial court abused its discretion when it determined that five-year-old Christopher Mendoza, Julie Mendoza's son, was competent to testify at trial.[7] We disagree.

There is a presumption of competency which may be rebutted by showing that the witness does not have sufficient capacity or sense of obligation to testify truthfully or understandably. MRE 601; *People v Garrison,* 166 Mich App 557, 559; 420 NW2d 851 (1988). A child witness' competency to testify is further governed by MCL 600.2163; MSA 27A.2163, which emphasizes the importance of a sense of obligation and understanding to tell the truth.

Absent an abuse of discretion, we will not reverse a trial court's decision to permit a child witness to testify. *People v Jehnsen,* 183 Mich App 305, 308; 454 NW2d 250 (1990); *People v Draper,* 150 Mich App 481, 488; 389 NW2d 89 (1986). Once the trial court is satisfied that the child is competent to testify, a later showing of the child's inability to testify truthfully reflects on credibility, not competency. *Jehnsen, supra.*

We have reviewed the trial court's interrogation into Christopher's competency and conclude that no abuse of discretion resulted. Christopher seemed aware of the importance to testify truthfully. Although his trial testimony reveals some confusion and contradiction, it was no more so than that of some of the older witnesses. Christopher also seemed more competent than four-year-old Margaret Ann Coddington, whose testimony

---

[7] We note that defendant does not contend that either six-year-old Michael Coddington or four-year-old Margaret Ann Coddington was incompetent.

supported defendant's accident theory, but whose competency is not being challenged by defendant. No error occurred.

VI

During trial, the court permitted, over defendant's objection, the admission of photographs of the crime scene and a videotape depicting various bloodstains and the slain body of Jean Coddington. On appeal, defendant argues that this evidence was not necessary to prove a material fact. We disagree.

Photographic evidence is admissible if relevant, pertinent, competent, and material to *any* issue in the case. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972); *People v Curry,* 175 Mich App 33, 46; 437 NW2d 310 (1989). The admission of this evidence is within the sound discretion of the trial court. *People v Zeitler,* 183 Mich App 68, 69; 454 NW2d 192 (1990). Photographs are not inadmissible merely because they may be gruesome and shocking; however, the trial court should preclude those which could lead the jury to abdicate its truth-finding function and convict on passion. *People v McCord,* 167 Mich App 365, 369; 421 NW2d 692 (1988).

We have reviewed the photographic evidence and conclude that the trial court did not abuse its discretion in permitting its introduction. The depiction of bloodstains was relevant to the medical examiner's conclusions regarding the relative positions of the victims when shot. Such conclusions are relevant to the issue of premeditation and deliberation. The photograph of Jean Coddington taken at her autopsy also illustrated the medical examiner's testimony regarding the stippling on Jean's head and face and the relative position of

the gun when fired. The depictions of Jean Coddington in the bedroom and during the autopsy are also relevant to the issue of premeditation and deliberation. In addition, the videotape provided the jury with a pictorial version of the layout of the house to aid it in understanding the testimony of the various witnesses. We find no error.

## VII

Following the close of the prosecutor's case in chief, defendant moved for a directed verdict with respect to first-degree murder, felonious assault, UDAA, and the attendant felony-firearm charges. The motion was denied. On appeal, defendant contends that the denial was erroneous because insufficient evidence was presented to justify submitting these issues to the jury. We again disagree with defendant.

In reviewing a motion for a directed verdict, we must view the facts in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the charged crime were proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-270; 380 NW2d 11 (1985).

### A

Defendant moved for a directed verdict on the first-degree murder charges, claiming that there was insufficient proof of premeditation and deliberation.

To constitute first-degree murder, it must be established that a defendant's intentional killing of another was deliberate and premeditated. *People v Youngblood,* 165 Mich App 381, 386-387; 418 NW2d 472 (1988). While the length of time needed

to measure and evaluate a choice before it is made is incapable of precise determination, there must be some interval in which a "second look" can be contemplated. *People v Furman,* 158 Mich App 302, 308; 404 NW2d 246 (1987). Premeditation and deliberation may be inferred from the facts and circumstances established on the record. *People v Gonzalez,* 178 Mich App 526, 532-533; 444 NW2d 228 (1989). Though not exclusive, factors which may be considered to establish premeditation include: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted. *Id., People v Jackson,* 171 Mich App 191, 199-200; 429 NW2d 849 (1988).

When viewed most favorably to the prosecution, the evidence reveals that defendant vehemently opposed Julie Mendoza's desire to keep the couple's unborn child. Arguments were frequent, and one had occurred the night of the shootings. A minor altercation resulted when Jean and Mary attempted to restrain defendant. After he struck Jean in the mouth, Mary called for her husband to assist in controlling defendant. In statements given to the police shortly after the shootings, Mary indicated that defendant spoke briefly with his father between his initial altercation with Julie and Jean and the ultimate shootings, thus indicating an opportunity in which a "second look" could be contemplated.

Just before the shootings, defendant indicated that any attempts to stop him would be futile, and there was evidence that defendant had reentered the bedroom after Jean had slammed the door shut. Four shots had been fired from a .357 magnum, all of which found their marks on the heads

of the two victims. Following the shootings, defendant fled in his mother's car and escaped to Texas.

We find that sufficient evidence was presented to justify the submission of first-degree murder charges to the jury. See *Petrella, supra.*

**B**

Defendant also moved for a directed verdict on the felonious assault charge. He argued that because Mary Coddington testified that she was never assaulted by defendant or ever in any fear of harm, a directed verdict should have been granted. Although this is an accurate characterization of her testimony at trial, the prosecution also presented the testimony of two police officers who had spoken with Mary just after the shootings. According to the officers, Mary stated that defendant threatened to shoot her if she did not get out of his way, that he had a gun in his possession, and that she was scared. We find that this was sufficient to defeat defendant's motion for a directed verdict. See *Petrella, supra.*

**C**

Defendant also sought a directed verdict on the UDAA charge, which was denied. As we previously indicated, defendant was acquitted of this charge and thus this issue is moot. See *People v Greenberg,* 176 Mich App 296, 302-303; 439 NW2d 336 (1989). Regardless, we find there was sufficient evidence to defeat the motion.

**D**

Lastly, we reject defendant's claim that a directed verdict should have been granted with re-

spect to the four felony-firearm charges. We have previously indicated that there was sufficient evidence to defeat a motion for a directed verdict on the four underlying felonies. We also find that sufficient evidence was presented that defendant committed the charged felonies while knowingly possessing a firearm. See *People v Oliver,* 170 Mich App 38, 44; 427 NW2d 898 (1988), modified on other grounds 433 Mich 862 (1989).

## VIII

Defendant also claims he was denied a fair trial because of misconduct of the prosecutor during his opening statement and closing argument. With respect to the opening statement, defendant alleges error when the prosecutor (1) requested the jury to give the victims a fair trial, (2) indicated that Julie Mendoza was found "gasping for air," and (3) mentioned the various child witnesses who had yet to be declared competent to testify.

We have reviewed the prosecutor's opening statement and the points of error alleged by defendant, and conclude that defendant was not denied a fair trial. Defendant's objection to the request to give the victims a fair trial was sustained, and the prosecutor immediately corrected himself. Second, the statement indicating Julie's condition when discovered was based on testimony from the preliminary examination. Finally, with regard to the reference to the child witnesses, we disagree with defendant that the prosecutor violated a pretrial agreement. Contrary to defendant's assertion, the prosecutor merely agreed not to discuss the children's anticipated testimony, and he did not discuss it. Regardless, because the children were permitted to testify, we find no prejudice to defendant from this comment. In sum, we conclude that

defendant was not denied a fair trial by comments made by the prosecutor during his opening statement. See *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989); *People v Simon,* 174 Mich App 649, 655; 436 NW2d 695 (1989).

With respect to the closing argument, defendant claims he was denied a fair trial because the prosecutor vouched for his guilt and displayed various exhibits, including a photograph of one of the victims, close to the jury box. We have reviewed the transcript of the closing argument and have found no passage where the prosecutor vouched for defendant's guilt. Rather, the jury was asked to view defendant's testimony as untruthful; such a request was permissible. *People v Sharbnow,* 174 Mich App 94, 100-101; 435 NW2d 772 (1989). We also conclude that defendant was not unfairly prejudiced by the display of exhibits which were properly admitted into evidence. Consequently, we conclude that defendant was not denied a fair trial on this ground.

IX

Defendant's final issue addressing the trial proceedings focuses on omissions from the jury instructions. Specifically, defendant claims that the trial court abused its discretion in refusing to instruct the jury regarding (1) self-defense, (2) intoxication, and (3) manslaughter.

A

Defendant first alleges error in the refusal to give a requested instruction regarding self-defense with respect to the murder charge relating to Jean Coddington. Although the court rejected his request, it did give the following accident defense instruction:

The defense raised in this case is that the deaths of Julie Mendoza and Jean Coddington occurred as a result of an accident, and that for this reason the defendant is not guilty of the crimes charged. That is, the defense is that the deaths occurred as a result of Jean Coddington pulling a gun on the defendant and the defendant struggling with her for control of the weapon.

We have reviewed defendant's testimony and conclude that his version is more in line with an accident defense than self-defense. His testimony indicates that he turned Jean's hand away from himself and Jean accidentally shot herself. Therefore, we conclude that the trial court did not err in refusing to give the requested instruction which was not supported by the evidence. See *People v Todd,* 186 Mich App 625, 630; 465 NW2d 380 (1990); *People v Benson,* 180 Mich App 433, 439; 447 NW2d 755 (1989).

B

Defendant also requested, but was denied, an instruction on intoxication. We find no error in the trial court's refusal where defendant's own testimony revealed that his drinking did not affect his behavior, and thus the instruction was not supported by the evidence. See *Benson, supra.*

C

Defendant's last issue concerning the instructions addresses the trial court's refusal to give a requested manslaughter instruction.[8]

---

[8] In his motion to remand for a hearing pursuant to *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), defendant raised the issue of defense counsel's failure to request an instruction regarding the lesser included offense of manslaughter. Our review indicates that defense counsel did in fact make this request, but that it was denied.

Voluntary manslaughter is a cognate lesser included offense of murder, and an instruction for it must be given when requested and supported by the evidence. *People v Pouncey*, 183 Mich App 216, 218; 454 NW2d 130 (1989).[9]

We have reviewed the record and conclude that sufficient evidence was presented to justify the reading of the voluntary manslaughter instruction, and thus the trial court erred in refusing the request. However, we find that the failure to so instruct was harmless with respect to defendant's first-degree murder conviction for the killing of Jean Coddington. See *People v Beach*, 429 Mich 450, 490-494; 418 NW2d 861 (1988). The jury had been instructed with regard to second-degree mur-

---

Consequently, we treat this issue independent of defendant's claim of ineffective assistance of counsel.

[9] CJI 16:4:02 outlines the difference between murder and voluntary manslaughter:

> (1) The crime of murder may be reduced to voluntary manslaughter if the killing be committed under the influence of passion or in the heat of blood produced by an adequate provocation and before a reasonable time has elapsed for the blood to cool. Manslaughter is distinguished from murder in that with voluntary manslaughter:
>
> (2) First, the mind or reason of the defendant is, at the time of the act, disturbed or clouded by mental or emotional excitement to an extent which might make an ordinary person likely to act rashly or without due deliberation or reflection and from passion, rather than judgment.
>
> (3) Second, the cause of such disturbance must be something which would cause ordinary persons to act rashly. The law does not state what things are sufficient to produce such a reaction. Anything which would naturally tend to produce such a state of mind in ordinary persons is sufficient. [If the defendant suffers from some peculiar weakness of mind or infirmity of temper, you may take this into consideration.]
>
> (4) Third, the killing must result from such provocation or passion. That is, the killing must have occurred before a reasonable time had elapsed for the blood to cool and for reason to resume its control. No precise time can be laid down. The test is whether or not a reasonable time had elapsed under these particular circumstances.

der, but rejected it and convicted defendant of the higher offense of first-degree murder. Therefore, we find that this verdict necessarily indicated the jury's rejection of the lesser charge of voluntary manslaughter. See *Beach, supra,* p 491.

This analysis, however, does not apply to defendant's second-degree murder conviction for the killing of Julie Mendoza. It is feasible that the jury reached its verdict finding that the shooting resulted from an argument or that it occurred in the heat of passion. Therefore, we conclude that the failure to give the voluntary manslaughter instruction for this crime was not harmless error. Consequently, we vacate defendant's conviction of second-degree murder and remand for entry of a judgment of conviction of voluntary manslaughter. See *People v Van Wyck,* 402 Mich 266; 262 NW2d 638 (1978); *People v Goliday,* 153 Mich App 29; 394 NW2d 476 (1986). The prosecutor may, in his discretion and upon notice to the trial court before resentencing, have the voluntary manslaughter conviction vacated and defendant retried on the second-degree murder charge. See *People v Garrett,* 161 Mich App 649, 652-653; 411 NW2d 812 (1987).[10]

## X

Defendant next argues that the totality of errors deprived him of a fair trial. We disagree because we have found little merit to defendant's allegations of error.

[10] If the prosecutor elects to retry defendant on the second-degree murder charge, defendant must be retried on the attendant felony-firearm conviction; otherwise the felony-firearm conviction and sentence related to the reduced conviction of voluntary manslaughter are affirmed. *People v Garrett,* 161 Mich App 649, 653; 411 NW2d 812 (1987).

## XI

Defendant contends that he is entitled to be resentenced because the trial court failed to respond to inaccuracies in the presentence report. Our review of the sentencing record reveals that, contrary to defendant's assertion, the trial court did make the corrections requested. However, because we have vacated defendant's conviction of second-degree murder, we also vacate the sentence for that conviction. We remand for resentencing for the conviction of voluntary manslaughter following entry of judgment for that conviction, provided that the prosecutor does not elect to retry defendant for second-degree murder.

## XII

Defendant's final claim is that he was denied the effective assistance of counsel.[11] He complains about three situations which he asserts constituted ineffective assistance: (1) a spat between defendant and his counsel which was observed by the jury; (2) defense counsel's failure to inform the judge about an allegation that members of the jury were reading newspaper reports about the trial; and (3) counsel's failure to inform the judge that defendant's niece allegedly saw one of the jurors speaking with the police officer in charge of the case. We have reviewed the record developed at the hearing pursuant to *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), and conclude that the trial court did not err in finding that defendant was not denied the effective assistance of counsel under either *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), or *Strickland v Washington,* 466

[11] The Court, retaining jurisdiction, granted defendant's motion to remand for a *Ginther* evidentiary hearing.

US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), reh den 467 US 1267 (1984).

We find that defendant's actions precipitated the "blow-up" over defense counsel's questioning of a witness. The attorney's decision not to emphasize the dispute by requesting a curative instruction and his underlying decision not to interrogate the witness as requested by defendant were clearly matters of trial strategy which will not be second-guessed. See *People v Barnett,* 163 Mich App 331, 338; 414 NW2d 378 (1987).

Regarding defendant's second claim, the testimony revealed that although one of the jurors took a newspaper into the jury room every day and read it, the juror did not read articles regarding defendant's trial. The juror stated that he abided by the trial court's admonition, and that his verdict was not affected by the knowledge that the paper did contain articles about the trial. A second juror also verified that none of the jurors read the articles relating to the case. We note that defense counsel did not recall ever being informed about these activities and thus it is unclear whether he acted improperly. Defendant was not prejudiced.

Lastly, we find no prejudice suffered by defendant from counsel's failure to advise the trial court of defendant's niece's observation. At the *Ginther* hearing, the testimony revealed that the niece was mistaken with respect to the identity of the woman speaking with the police officer; she was not a juror as suspected, but rather a prosecuting attorney. In sum, we conclude that defendant failed to demonstrate ineffective assistance of counsel.

## XIII

Defendant's conviction of second-degree murder

for the killing of Julie Mendoza is vacated and the case is remanded for entry of a judgment of conviction of voluntary manslaughter and for resentencing. The prosecutor is granted the discretion to request the trial court to vacate this conviction before resentencing in order to retry defendant on a second-degree murder charge. In all other respects, defendant's convictions and sentences are affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.