*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARTIZE REDE-JORDAN EVANISH,

Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 345355
Genesee Circuit Court
LC No. 17-041897-FC

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables); four counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and one count each of kidnapping, MCL 750.349; armed robbery, MCL 750.529; possession of a weapon directing electrical current (possession of a Taser), MCL 750.224a; and being a felon in possession of a firearm (felon-in-possession), MCL 750.224f. We affirm.

## I. BACKGROUND

On August 29, 2015, at approximately 3:00 a.m., SK was walking alone, soliciting herself for sex work. SK testified that she had used heroin and crack cocaine earlier in the day, but said that she was not high at the time. She testified that defendant picked her up in a car and she agreed to perform oral sex in exchange for money. Defendant drove her to the parking lot of an abandoned elementary school, and four additional men got into the car. They threatened her with guns while defendant repeatedly activated a Taser to frighten her. Defendant called his brother, Cordario Colter, and said, "We got one, come to the spot." The men drove to an abandoned trailer park and forced SK into a trailer. The men ripped off SK's shirt, then took turns forcing SK to have oral and vaginal sex with them. She testified that they called her names, kicked her, and hit her, while defendant activated the Taser nearby. Eventually, a sixth man showed up on a bicycle, threatened SK with a gun, forced her to perform oral sex on him, and urinated in her mouth. After approximately three hours, the men dropped SK off in an unfamiliar neighborhood and drove away.

-1-

SK eventually found help and was able to show responding officers the trailer where she believed the attack occurred. She was transported to a hospital and given a sexual assault examination. The attending nurse testified that SK had multiple injuries, but only one appeared to be fresh, and that SK did not have vaginal trauma, which was not surprising given her age. The nurse collected samples from SK's hands, mouth, and vaginal area for testing.

In October 2015, defendant and Colter allegedly committed another sexual assault, which defendant was arrested for on October 26, 2016. As part of the investigation into that assault, officers discovered a gun and a Taser inside defendant's vehicle. On November 6, 2015, SK recognized photos of defendant and Colter on a Facebook post and contacted the detective in charge of her case. At trial, she testified that she was 100% confident that defendant was the driver who picked her up and that Colter was the last man who arrived on the bicycle. Colter was charged as a co-defendant.

Because of a delay with the DNA testing, a felony complaint for SK's assault was not filed until August 1, 2017, and a preliminary examination was held on August 22 and 23, 2017. Meanwhile, defendant's case related to the October 2015 assault faced numerous delays. On November 20, 2017, the prosecutor filed a motion to consolidate defendant's two cases, arguing they were factually similar. On January 29, 2018, the trial court ruled to keep defendant's two cases separate. A trial date for SK's assault was set for April 18, 2018. Two days before trial was to start, Colter reached a plea agreement, which included his agreeing to testify against defendant. On the day defendant's trial was to begin, the trial court noted that defendant did not have adequate time to prepare for Colter's testimony, so it would not be fair to continue with the trial as scheduled. At the same hearing, defendant requested new counsel. Acknowledging that it would take time for a new lawyer to be brought up to speed on defendant's case, the trial court told defendant that he would have to choose between new counsel or a speedy trial. Defendant chose new counsel and affirmatively waived his right to a speedy trial. Trial began on July 17, 2018.

The jury convicted defendant as stated. He now appeals as of right.

II. SPEEDY TRIAL

Defendant first argues that he was denied his right to a speedy trial. We disagree.

We review de novo a defendant's claim that his right to a speedy trial was violated. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999).

As stated above, defendant affirmatively waived this issue in the trial court. "Waiver consists of (1) specific knowledge of the constitutional right and (2) an intentional decision to abandon the protection of the constitutional right." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). After defendant requested new counsel, the trial court informed him that the delay appointing new counsel would interfere with his right to a speedy trial. Defendant confirmed that he understood. The trial court then asked defendant if he was willing to waive his right to a speedy trial, to which defendant responded that he was.

Defendant argues that he should not be held accountable for this waiver because the trial court effectively forced him to waive the right. Yet defendant was not forced to waive his right;

he chose to waive the right so that new counsel would have time to become familiar with the case. Defendant was solely responsible for his decision to request new counsel the day that trial was scheduled to begin, and it was within the trial court's discretion to grant or deny that request. See *People v Echavarria,* 233 Mich App 356, 369-370; 592 NW2d 737 (1999); *People v Arquette*, 202 Mich App 227, 231; 507 NW2d 824 (1993). The trial court permitted the change of counsel, conditioned on defendant waiving his right to a speedy trial to allow his new counsel time to get up-to-speed on the case. Defendant accepted that condition and waived his right to a speedy trial. We conclude that defendant's voluntary agreement to give up his right to a speedy trial constituted a valid waiver.[1]

## III. EVIDENCE OF THE TASER

Defendant next argues that the trial court erred by allowing into evidence the Taser found in his car following his arrest for the separate October 2015 sexual assault. Defendant contends that this evidence was improper other-acts evidence. We disagree.

We review for abuse of discretion a trial court's decision to admit other-acts evidence. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). A trial court abuses its discretion when it "chooses an outcome that is outside the range of principled outcomes." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017).

MRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence that a Taser was found in defendant's car was not "[e]vidence of other crimes, wrongs, or acts" subject to MRE 404(b)—it was evidence of whether defendant possessed a Taser. Obviously, proving that defendant possessed a Taser was necessary to convict defendant of possession of a Taser under MCL 750.224a, and evidence of a Taser found in defendant's car

---

[1] It is also worth noting that defendant's trial commenced within a reasonable time. The right to a speedy trial attaches at "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge," whichever occurs first. *United States v Marion*, 404 US 307, 320, 325; 92 S Ct 455; 30 L Ed 2d 468 (1971). Defendant argues that his right to a speedy trial attached at the time of his arrest on October 26, 2015, meaning there was a 33-month delay between his arrest and trial. However, defendant was arrested on a charge unrelated to this case, and the complaint in this case was not filed until August 1, 2017. Therefore, defendant's right to a speedy trial attached on August 1, 2017, meaning that there was only an 11-month delay until defendant's trial on July 17, 2018.

tended to prove that defendant possessed a Taser. Because the evidence of the Taser was not other-acts evidence, the trial court did not abuse its discretion by not excluding it under MRE 404(b).

## IV. WITNESS COMPETENCY

Defendant next argues that the evidence was insufficient for a rational jury to have found him guilty of all charges. According to defendant, both SK and Colter were incompetent to testify, so their testimony should have been excluded, and the remaining evidence was insufficient to find him guilty. Thus, while defendant frames this issue as one of insufficiency, the actual question for us to decide is whether SK and Colter were competent to testify. We conclude that they were.

MRE 601 provides:

> Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.

In other words, "[t]he test of competency is . . . whether the witness has the capacity and sense of obligation to testify truthfully and understandably." *People v Watson*, 245 Mich App 572, 583; 629 NW2d 441 (2001). Witnesses are presumed competent, and the party arguing that a witness is incompetent has the burden of proving it. *People v Coddington*, 188 Mich App 584, 597; 470 NW2d 478 (1991). Once a witness is deemed competent, his or her credibility is for the jury to decide. *Id*.

Defendant's argument that Colter and SK were incompetent to testify is unpersuasive because it only addresses whether they were credible witnesses, not whether they were competent. First, defendant argues that Colter was not competent to testify because he was willing to say whatever was necessary to assure himself a lower prison sentence. Even if Colter was motivated by obtaining a lower prison sentence, there is no indication that he did not have the capacity or sense of obligation to testify truthfully. Colter acknowledged that his answers had changed and admitted numerous details that corroborated SK's account of the assault. The only testimony that Colter changed outright was testimony that implicated his brother, and even then, he ultimately affirmed that his brother assaulted SK. Further, even though Colter accused the prosecutor of taking advantage of his alleged mental illness, we have determined that a witness with a mental disability can be considered competent to testify. See *People v Breck*, 230 Mich App 450, 458; 584 NW2d 602 (1998). In sum, Colter may have been confused at times because of his own contradictory testimony, but he recognized that his answers had changed and amended his testimony when the prosecutor confronted him with his contradictory answers. We therefore conclude that Colter was competent to testify.

As for SK, defendant argues that she was not competent to testify because she had used heroin on the day of the assault and she did not remember certain details about the assault. Yet these concerns weigh on SK's credibility, not her competency—there is no indication that SK's drug use or her inability to remember certain details of the assault interfered with her ability to testify truthfully or understandably at trial. Defendant also argues that SK's testimony was contradicted by other evidence. Even if true, this weighs on SK's credibility, not whether SK had

"the capacity and sense of obligation to testify truthfully and understandably." *Watson*, 245 Mich App at 583.

Ultimately, both Colter and SK followed counsel's questions clearly and gave articulate answers throughout their testimony. Any contradictory testimony they offered affected their credibility, and the jury was instructed on its role in assessing witness credibility. The jury returned a conviction against defendant on all counts. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The jury was well equipped to handle any contradictory testimony offered by Colter or SK, and issues of credibility did not make either witness incompetent to testify. Because defendant only argues that the evidence was insufficient to convict him because Colter and SK were not competent, defendant is not entitled to relief on his insufficiency claim.

## V. INEFFECTIVE ASSISTANCE

Defendant next argues that he was denied effective assistance of counsel based on numerous decisions his trial counsel made. We disagree.

To obtain relief based on ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015). This Court will not second-guess tactics of trial strategy, such as decisions concerning what evidence to present and which witnesses to call. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

First, defendant argues that it was unreasonable for defense counsel to not pursue the dismissal of charges on the basis of defendant's significant delay in trial. Because defendant's right did not attach until the felony complaint was filed on August 1, 2017, only eight months had passed before defendant waived his right on April 18, 2018. A speedy-trial claim raised some time during those eight months would have been meritless, and defense counsel cannot be found ineffective for failing to advance a meritless argument. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that counsel was ineffective by failing to request an other-acts jury instruction for evidence of the Taser. As previously discussed, evidence of the Taser was not MRE 404(b) evidence, so defendant could not have received an other-acts jury instruction based on its admission. Defense counsel was not ineffective for failing to advance a meritless position. See *Ericksen*, 288 Mich App at 201.

Defendant next argues that his counsel was ineffective for failing to request that the testimony of Colter and SK be stricken because they were incompetent. As previously discussed, both witnesses were competent to testify. Defense counsel cannot be found ineffective for failing to advance a meritless claim. See *Ericksen*, 288 Mich App at 201.

Finally, defendant argues that his counsel's agreement to admit all forensic evidence through the sole testimony of Jennifer Morgan, who was a forensic scientist with the Michigan

State Police and was qualified as an expert in DNA testing and identification, was unreasonable. Defendant does not, however, argue that the evidence was otherwise inadmissible; he merely argues that defense counsel could have objected to Morgan presenting it and requested that the prosecutor call others to present the evidence. Because persons other than Morgan could have been called to present this evidence, it would have been before the jury regardless of whether Morgan presented it. Thus, defendant cannot establish that he was prejudiced by defense counsel's decision to not object to Morgan presenting all of the forensic evidence. *Ackley*, 497 Mich at 389.

## VI. PROSECUTORIAL MISCONDUCT

Defendant lastly argues that the prosecutor's decision to call Colter as a witness was prosecutorial misconduct.[2] We disagree.

Defendant failed to preserve his claim of prosecutorial misconduct by objecting to the alleged error at trial. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000), abrogated on other grounds by *Crawford v Washington*, 541 US 36, 64; 124 S Ct 1354; 158 L Ed 2d 117 (2004).

The test for prosecutorial misconduct is whether a defendant was denied a fair trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

Defendant's primary argument is that the prosecutor's decision to call Colter as a witness was misconduct because Colter was an incompetent witness. However, as previously discussed, Colter was competent to testify. And even if his story was contradictory or he seemed confused at times, Colter had been evaluated and deemed competent to stand trial, so the prosecutor had no reason to assume that he would be unfit as a witness. Defendant also contends that the prosecutor should not have called Colter because he was not a credible witness, but Colter's credibility was an issue for the jury. Defendant had the opportunity to highlight any inconsistencies in Colter's testimony and argue to the jury that he was not worthy of belief. While Colter's testimony may have been damaging to defendant, all evidence is prejudicial to some extent, *People v Mills,* 450 Mich 61, 70; 537 NW2d 909 (1995), and we cannot conclude that the prosecutor's decision to call Colter as a witness deprived defendant of a fair trial.

Affirmed.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

---

[2] This Court explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," while only the most extreme cases rise to the level of "prosecutorial misconduct." However, we will use the phrase "prosecutorial misconduct" because it has become a term of art.