# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY ALEXANDER MADDOX,

Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 324084
Wayne Circuit Court
LC No. 14-004639-FC

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent terms of life imprisonment for the murder conviction, and two to five years' imprisonment for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

A jury convicted defendant of fatally shooting Casey Durham on September 27, 2012, in Highland Park. The shooting occurred at Antwon Wakefield's house. The prosecution presented evidence that defendant and Durham were in the living room of Wakefield's house, having a conversation about money that defendant owed to Durham. After the discussion ended, Wakefield and Durham engaged in further conversation when defendant emerged from an enjoining room and shot Durham. Christopher Stevens, who was upstairs, came downstairs after hearing three gunshots, and saw defendant holding a pistol pointed toward Durham's dead body. No one reported the incident to the police at that time. Two days later, Durham's severed head and an arm were found inside a house in Detroit, and his remaining body parts were subsequently found behind a different house. In December 2013, the police became aware of defendant as a suspect, and Wakefield, Stevens, and Wakefield's girlfriend, Samantha Herd, ultimately gave police statements about the shooting. The defense denied that defendant was the perpetrator, and argued that the prosecution witnesses had motives to lie, and that the police investigation was not reliable.

-1-

## I. FELON-IN-POSSESSION STIPULATION

Pursuant to the parties' stipulation, the jury was informed that defendant had previously been convicted of a felony. Defendant asserts that this procedure is unfairly prejudicial and denied him a fair trial. We disagree.

Defendant was charged with being a felon in possession of a firearm. In *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997), this Court adopted safeguards for felon-in-possession charges that include, as occurred in this case, the introduction of an unspecified felony conviction through a stipulation. Such a stipulation minimizes the possibility of prejudice resulting from the introduction of evidence of a defendant's prior conviction, which is necessary to establish his status as a convicted felon. This Court has expressly approved this procedure as an adequate method for safeguarding a defendant's rights. *People v Green*, 228 Mich App 684, 691-692; 580 NW2d 444 (1998).

"When the parties stipulate a set of facts, the stipulated facts are binding on the court[.]" *People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007). A party cannot ask the court to accept a stipulation and then submit on appeal that the acceptance was erroneous. *People v McCray*, 210 Mich App 9, 14; 533 NW2d 359 (1995). By stipulating that he was previously convicted of a specified felony that prohibited him from lawfully possessing a firearm, defendant waived appellate review of this issue. Waiver is the intentional relinquishment or abandonment of a known right, and a defendant who waives a right extinguishes any underlying error, precluding appellate review. *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012). Although defendant argues that he should have been allowed to plead no contest or guilty to the charge outside the presence of the jury, there is no indication in the record that he ever offered to plead guilty to the charge or asked to bifurcate the charges. Rather, the record discloses that the stipulation was entered into with defendant and defense counsel's consent. Defendant cannot approve a course of action in the trial court and then object to that action on appeal. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). Consequently, we reject this claim of error.

## II. PROSECUTOR'S CONDUCT

Defendant argues that the prosecutor engaged in misconduct that denied him a fair trial when he suggested that the jury convict defendant as part of its civic duty, and vouched for the credibility of prosecution witness Herd. Again, we disagree. Because defendant did not object to the prosecutor's questions or remarks in closing argument, these claims are unpreserved. We review unpreserved claims of prosecutor misconduct for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). This Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Defendant argues that the prosecutor urged the jury to convict him to help stop the senseless violence in Wayne County by referencing crime statistics during his direct examination of a police sergeant. Defendant cites only the emphasized portion in the following exchange:

*Q*. And considering the date of this offense being September 27th of 2012 and the time that you're finally developing a suspect, Anthony Maddox over a year later, did that pose any problems to you in acquiring cell phones [sic] record[s]?

*A*. Yes, it would.

*Q*. What?

*A*. They only hold—the systems usually purges [sic] after about a year, the phone records. That's what we were running into problems with.

*Q*. Okay. *And how many years have you been a detective investigating homicide cases?*

*A*. *Four years.*

*Q*. *And how many homicide investigations have you conducted during that span of time if you can estimate?*

*A*. Well, that's a good question.

*Q*. Would it be over 60?

*A*. *Yes, it [sic] be over 60.*

*Q*. And of these investigations would you say the majority of them are investigation that you're taking on soon after a crime has been committed and a suspect has been identified?

*A*. I'm sorry. Repeat that again.

*Q*. Would you say or assume that a majority of these investigations that you have been involved in involve investigations that a suspect in a crime scene has been developed quickly?

*A*. Can't say all of them. No, develop quickly. No.

*Q*. But in some of those [investigations] you have scenes that develop quickly and suspects identified quickly and some that you don't?

*A*. Yes.

*Q*. Is there a difference or a difficulty of one versus the other?

*A*. Yes. When suspects are identified quickly, we are able to get evidence in a much expedited fashion, phone records and things of that nature.

*Q.* And did that pose an issue to you in your investigation in this matter?

*A.* Yes. [Emphasis added.]

A prosecutor may not argue that jurors should convict a defendant as part of their civic duty. *People v Cox*, 268 Mich App 440, 452; 709 NW2d 152 (2005). Such an argument is improper because it appeals to the fears and prejudices of the jurors, thereby injecting issues broader than the defendant's guilt or innocence into trial. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005). Viewed in context, the challenged questions were not a suggestion that the jury convict defendant on the basis of civic duty. It is apparent that the testimony was elicited to show the sergeant's investigation experience, thereby establishing a foundation for the sergeant's testimony about the limitations and difficulties of developing evidence in cases, such as this one, when a suspect is not immediately revealed. Indeed, defense counsel emphasized the lack of any physical evidence, including cell phone records, during both opening statement and closing argument, and when cross-examining the sergeant. Further, a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 72; 732 NW2d 546 (2007). There is nothing in the record to support that the prosecutor acted in bad faith. The questions were not intended to inject issues broader than defendant's guilt or innocence, and the prosecutor was not "encouraging jurors to suspend their powers of judgment." *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Consequently, the prosecutor's questions did not constitute a civic duty argument, and were not plainly improper.

We also disagree with defendant's claim that the prosecutor improperly vouched for Samantha Herd's credibility during closing argument. Defendant correctly observes that a prosecutor may not vouch for the credibility of a witness by conveying that he has some special knowledge that the witness is testifying truthfully. *People v Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, prosecutors have great latitude when arguing at trial. *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). They may argue the evidence and all reasonable inferences that arise from the evidence as they relate to their theory of the case, and they need not state their inferences in the blandest possible language. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *Dobek*, 274 Mich App at 66.

The prosecutor did not suggest that he had some special knowledge that Herd was credible. The prosecutor's remarks emphasizing Herd's courage in coming forward and her transparency about her lifestyle were part of a permissible argument regarding credibility that was focused on countering the defense implication that Herd was an untrustworthy drug addict and not credible. The prosecutor's remarks were made in the context of providing reasons, grounded in the evidence, why Herd should be believed. The prosecutor noted that Herd made no effort to conceal her prostitution and drug-related history. In his closing argument, the prosecutor urged the jury to evaluate Herd's testimony and demeanor, discussed the reliability of her testimony, and argued that there were reasons from the evidence to conclude that defendant was guilty of the charged crimes. The prosecutor's argument was responsive to the evidence and the theories presented at trial and, viewed in context, was not clearly improper.

-4-

Moreover, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. See *Watson*, 245 Mich App at 586. And even though defendant did not object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). It is well established that jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The prosecutor's conduct did not deny defendant a fair trial.

## III. SUFFICIENCY OF THE EVIDENCE

Lastly, defendant argues that the prosecutor failed to present sufficient evidence of his identity as the perpetrator and, even if he had, there was insufficient evidence that he acted with premeditation and deliberation. We disagree. When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## A. IDENTITY

Identity is an essential element in a criminal prosecution, *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *Nowack*, 462 Mich at 400. The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Id.*

Two eyewitnesses, who were familiar with defendant, unequivocally identified defendant as the gunman. Wakefield testified that he and Durham were sitting on a couch, engaged in conversation, when he saw defendant shoot Durham. Stevens testified that he heard three gunshots, looked into the living room, and saw Durham lying dead on the couch, and defendant pointing a pistol toward Durham's body. These witnesses' testimony, if believed, was sufficient to establish defendant's identity as the shooter. *Davis*, 241 Mich App at 700. Defendant's challenges to the weight and credibility of the witnesses' identification testimony were matters for the jury to decide and do not affect the sufficiency of the evidence. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). The same challenges to the identification testimony that defendant raises on appeal were presented to the jury during trial. This Court will not interfere with the jury's role of determining issues of weight and credibility. *People v Wolfe*, 440 Mich

508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Rather, this Court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. *Nowack*, 462 Mich at 400. There was sufficient evidence of defendant's identity.

## B. PREMEDITATION

First-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2002). Premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). The following nonexclusive list of factors may be considered to establish premeditation and deliberation: (1) the previous relationship between the decedent and the defendant, (2) the defendant's actions before the killing, (3) the circumstances surrounding the killing itself, including the weapon used and the location of the wounds inflicted, and (4) the defendant's conduct after the homicide. *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008); *People v Coddington*, 188 Mich App 584, 600; 470 NW2d 478 (1991). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

The prosecution presented evidence that defendant and Durham discussed defendant's debt to Durham, defendant agreed to make payments, and Durham was satisfied with the payment agreement. During their conversation, defendant was not holding a gun. Durham was not armed and had not acted aggressively toward defendant. Thereafter, as Durham and Wakefield sat on the living room couch talking, Wakefield saw defendant come from the kitchen area and shoot Durham; Durham suffered gunshot wounds in the head and chest. There was evidence that a "house gun" was kept on the kitchen counter. After shooting Durham, defendant told Wakefield, "it ain't nothing you can do for him now. He gone." Wakefield left the house, leaving defendant and Durham's body there. The next day, when Wakefield returned home, the couch, Durham's body, and the house gun were gone. Defendant informed Wakefield that Durham would never be found, explaining, "like driving down the freeway throwing pieces of puzzle out the window. Never be able to put it back together again."

This evidence, viewed in a light most favorable to the prosecution, was sufficient for a jury to find premeditation and deliberation beyond reasonable doubt. The evidence that defendant acted after the discussion about money had amicably ended, that Durham was sitting on the couch engaged in conversation with Wakefield, and that Durham had not acted aggressively toward defendant allowed the jury to find that defendant was not in imminent danger and had an opportunity to reflect on his actions before he shot Durham. The time required between defendant's conduct of obtaining a weapon and shooting Durham multiple times also afforded him sufficient time "to take a second look" at his actions. See *People v Tilley*, 405 Mich 38, 43-46; 273 NW2d 471 (1979), and *People v Lewis*, 95 Mich App 513, 515; 291 NW2d 100 (1980). Further, evidence that, after the crime, defendant attempted to dispose of the body by dismembering and scattering the parts further supports a finding of premeditation and deliberation. *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 783 (1998). Consequently, considering the evidence of the circumstances surrounding the killing, a jury could rationally infer that defendant acted on a decided course of action rather than an unplanned

impulse. The evidence was sufficient to sustain defendant's conviction of first-degree premeditated murder.

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens