*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTIN AMIR HOUSE,

        Defendant-Appellant.

UNPUBLISHED
June 11, 2026
3:09 PM

No. 367024
Kent Circuit Court
LC No. 22-005894-FC

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317 and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve 14 to 40 years' imprisonment for second-degree murder, to be served consecutive to two years' imprisonment for the felony-firearm conviction. On appeal, defendant raises three issues: first, he received ineffective assistance of counsel; second, the trial court erred by excluding character evidence about the victim but admitting autopsy photographs; and third, the trial court erred when sentencing defendant. We affirm.

## I. BACKGROUND

In March 2022, defendant's father's vehicle, a Honda Crosstour, was stolen. On March 12, 2022, defendant, his girlfriend, and their young child were driving and came across the stolen Honda. Defendant pulled in front of, and facing the Honda, at an intersection. An eyewitness, Christian Bethea, Jr., testified at trial that he was stopped at the red light immediately behind the Honda. The witness saw the car doors open on defendant's vehicle; the Honda "slammed in reverse," twice hitting Bethea's vehicle; and four teenage males exited the Honda and ran away. Bethea saw that two of the teenagers had handguns. After the initial crash, Bethea used the camera on his phone to record defendant getting out of his vehicle and following the teenagers. Several other witnesses saw portions of the incident, including Emily Killmer, who was in a nearby car.

Killmer saw two of the teenagers run away with guns in their hands. Defendant's girlfriend called 911. Defendant's cousin, Ronald James, also drove by the scene and saw a teenager with a gun. Defendant ultimately shot and killed the 13-year-old victim. When police officers

-1-

interviewed defendant, defendant reported that he heard someone say "bro, shoot him, he's following us," and he saw an individual in a red coat gesture "as if he was pulling out a weapon from his waist area or coat." Defendant reported to the police that this is what made him draw his weapon and fire. Before trial, the defense moved to admit pictures and videos posted by the victim to his social media sites as character evidence of the victim and to present evidence that the victim was a member of a juvenile gang and that there were pictures on social media of the victim possessing firearms. Defendant claimed such evidence would "complete his theory of self-defense." The trial court denied defendant's motion to admit the evidence about the victim.

During trial, over defense counsel's objections, the prosecution admitted two autopsy photographs of the victim. The jury found defendant guilty of second-degree murder and felony-firearm, and the trial court imposed sentenced as previously noted.

Defendant moved for a new trial or evidentiary hearing on the basis of ineffective assistance of counsel and for resentencing. Defendant submitted declarations from four individuals who stated that they would have been available to testify about defendant's character for peacefulness. After making some changes to the offense variable scoring, the trial court denied defendant's motions.

Defendant now appeals.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

First, defendant argues that he received ineffective assistance of counsel when defense counsel did not present evidence of his character.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187-188; 891 NW2d 255 (2016). We review for clear error a trial court's factual findings and review de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Clear error exists when this Court is left with a definite and firm conviction that the trial court made an error. *People v Buie*, 491 Mich 294, 315-316; 817 NW2d 33 (2012). Although defendant has preserved the issue, no evidentiary hearing has been held and, therefore, review is limited to errors apparent on the lower court record. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). We do not interfere with a jury's determination of witness credibility. See *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. See US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *Jordan*, 275 Mich App at 667. A defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment, and a defendant

must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). Defense counsel's performance prejudiced the defense if there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). This Court does not substitute its judgment on matters of trial strategy or use the benefit of hindsight to assess counsel's competence. *Id*. at 242-243.

At the time of defendant's trial,[1] Michigan Rule of Evidence (MRE) 401 provided that evidence was relevant if it had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 404(a)(1) provided that evidence of a person's character is not admissible to prove that he or she acted in conformity with that character, but one exception for that rule is that a criminal defendant may offer evidence of a pertinent character trait. MRE 404(a)(2). Under MRE 405(a), when character evidence is admissible, a party may prove it through testimony about the person's reputation or in the form of an opinion. "On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct." MRE 405(a). Further, if character or a character trait is an essential element of a charge, claim, or defense, evidence about specific instances of the person's conduct is admissible. MRE 405(b). A defendant may present evidence that he has a character trait that makes it less likely that he committed the charged offense. *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009). Evidence that a defendant has a peaceful character is relevant to a charge involving violent conduct. *People v Zitka*, 335 Mich App 324, 341-342; 966 NW2d 786 (2020).

The trial court did not err by denying defendant a new trial or evidentiary hearing on the basis of ineffective assistance of counsel. The record demonstrates that defense counsel argued at trial that defendant acted in self-defense and, accordingly, cross-examined the prosecution's witnesses and called defense witnesses who testified that the teenagers had guns. Further, before trial, defense counsel sought to introduce evidence about the victim to demonstrate that he was the aggressor in this situation, and defense counsel mentioned that an investigator would possibly testify on defendant's behalf, indicating that defense counsel was acting intentionally to craft his defense. Decisions about which witnesses to call are a matter of trial strategy. See *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

As defendant argues, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. A defense attorney has the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. (quotation marks and citation omitted). Here, defense counsel decided to present

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). This opinion relies on the rules as they were at the time of defendant's trial in early 2023.

a self-defense claim and not present the named-character witnesses. Defendant has not overcome the strong presumption that this constituted reasonable trial strategy, and defendant has not demonstrated that defense counsel's performance fell below an objective standard of professional reasonableness. See *Jordan*, 275 Mich App at 667-668.

Even if defense counsel failed to investigate character witnesses or to have them testify and this failure was objectively unreasonable, defendant has not demonstrated that there is a reasonable probability that, but for the error, the result of defendant's trial would have been different. See *id*. at 667.

Defendant argues that the failure to call character witnesses prevented defendant from completing his self-defense theory. The evidence does not bear this out. The jury heard evidence supporting defendant's theory of self-defense, including testimony that two of the teenagers who exited the Honda had guns and that defendant reported to the police that he heard one of the teenagers make a statement that he perceived as a threat to his life. Defense counsel presented evidence supporting his theory of self-defense at trial.

The prosecution presented evidence to refute this, such as testimony from eyewitnesses like Bethea who testified as to seeing the victim and his friends run from the Honda, evidence that the victim was shot in the back, and no evidence indicating that either the victim or his friends turned around and confronted defendant while attempting to get away. The character witnesses who submitted affidavits in support of defendant on appeal neither materially add to what was presented by defense counsel in support of the theory of self-defense, nor materially refute the evidence contradicting this theory by the prosecution.

Accordingly, defendant's proposed character witness testimony was not outcome-determinative. See *People v Traver*, 328 Mich App 418, 428; 937 NW2d 398 (2019). Defendant's claim of ineffective assistance of counsel fails on this basis.

## B. CHARACTER EVIDENCE OF THE VICTIM

Next, defendant argues that the trial court erred by excluding evidence regarding the victim's purported reputation for aggression and violence that would have supported defendant's claim that the victim was the aggressor in this incident.

We review for an abuse of discretion a trial court's decision whether to admit evidence. See *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). "[T]his Court reviews de novo whether a rule or statute precludes admission of evidence as a matter of law." *Roper*, 286 Mich App at 91. A trial court necessarily abuses its discretion when it makes an evidentiary decision on the basis of an error of law. *Id*. An error in excluding evidence does not warrant reversal unless " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 495-496, quoting MCL 769.26.

A trial court may exclude even relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the

jury, undue delay, waste of time, or needlessly cumulative evidence. MRE 403. MRE 404(a)(2) provided that, in a homicide case involving a self-defense claim, the defendant may offer evidence about the victim's character for aggression.

When a defendant claims that he or she acted in self-defense, the defendant may present evidence that the victim had a violent character, even if that character was unknown to the defendant, because that evidence makes it more probable that the victim acted as the aggressor. On the other hand, to prove a defendant's state of mind at the time the defendant acted, reputation evidence of a victim must be known by the defendant to be admissible. In *People v Edwards*, 328 Mich App 29, 37-39; 935 NW2d 419 (2019), this Court analyzed these issues and discussed the Supreme Court's decision in *People v Harris*, 458 Mich 310, 315-316; 583 NW2d 680 (1998), explaining that, in *Harris*,

> the Michigan Supreme Court held that evidence of the violent character of the decedent in the form of reputation evidence is admissible, even if unknown to the defendant, to show the decedent's probable aggression and act of violence at the time the decedent was killed. Our Supreme Court explained, however, that reputation evidence could not be used to prove the defendant's state of mind unless the defendant knew about the decedent's character at the time[.] [*Edwards*, 328 Mich App at 35].

Evidence from social network and personal websites constitutes general reputational evidence, which does not implicate the prohibition against the admission of evidence concerning specific instances of conduct. See *People v Orlewicz*, 293 Mich App 96, 104-105; 809 NW2d 194 (2011).

In this case, the trial court did not abuse its discretion by excluding evidence from the victim's social media sites displaying violent poses or his purported gang affiliation. During the pretrial motion hearing, the trial court focused, in part, on defendant not knowing the victim. See *Harris*, 458 Mich at 315-316. Moreover, the trial court raised doubts that the victim was, in fact, the aggressor even if he made the statement to shoot defendant when it was another person who would have pulled out a gun. Further, the trial court stated that the evidence would cause the jury to focus on the wrong information. See MRE 401; MRE 403. It was not outside of the range of reasonable and principled decisions for the trial court to find that the evidence was irrelevant and prejudicial. See *Orr*, 275 Mich App at 588-589.

Even if the trial court erred by excluding the evidence, however, remand is not warranted because it is not likely that the exclusion of evidence was outcome-determinative. See *Lukity*, 460 Mich at 496. The jury heard evidence that the teenagers stole defendant's father's car and had guns. The jury also heard that defendant told officers that he heard a teenager instruct another teenager to shoot him. Considering this evidence, as well as the evidence that defendant shot the victim in the back, there is no basis to find that admission of the victim's character evidence would have affected the outcome of the proceedings.

C. AUTOPSY PHOTOGRAPHS

Defendant likewise asserts that the trial court erred by admitting two autopsy pictures. "The admission of photographic evidence is reviewed for an abuse of discretion." *People v*

*Anderson*, 209 Mich App 527, 536; 531 NW2d 780 (1995). Photographic evidence is admissible if relevant, pertinent, competent, and material to *any* issue in the case." *People v Coddington*, 188 Mich App 584, 598; 470 NW2d 478 (1991). Although photographs are not inadmissible solely because they are graphic or shocking, a trial court should exclude photographs "that could lead the jury to abdicate its truth-finding function and convict on passion alone." *Anderson*, 209 Mich App at 536. On appeal, this Court must evaluate "whether the photographs were substantially necessary or instructive to show material facts or conditions or whether they were merely calculated to excite passion and prejudice." *People v Duby*, 120 Mich App 241, 256-257; 327 NW2d 455 (1982). "The trial court is not expected to protect the jury from all evidence that is somewhat difficult to view." *People v Mills*, 450 Mich 61, 79; 537 NW2d 909 (1995).

In this case, the prosecution admitted two photographs of the victim's autopsy. As the prosecution argues, the pictures demonstrate defendant shot the victim in the back. This evidence supports the prosecution's contention that defendant did not shoot the victim in self-defense by demonstrating that the victim was shot in the back. The evidence was, therefore, relevant to defendant's theory of self-defense. See MRE 401.

Next, although the photographs are undoubtedly emotional, as they show a deceased teenager with a gunshot wound, the photographs are not overly graphic. One photo shows the victim's back, while the other photo shows the victim's front. There is a gunshot wound, but no other injuries or blood.

Defendant relies on *People v Falkner*, 389 Mich 682, 685-686; 209 NW2d 193 (1973), in which the Michigan Supreme Court held that the trial court erred by admitting photographs of the victim because there was no reason to admit the photographs other "than to excite passion and prejudice" when the victim was indisputably killed by a shotgun and the defendant was claiming to have an alibi. Here, however, the photographs served an evidentiary purpose in that defendant does not dispute that he shot the victim. Instead, his position is that the shooting was done in self-defense and that the victim was shot in the chest. The prosecutor admitted 2 out of 35 possible photographs and presented them in combination with the pathologist's testimony to demonstrate that the victim was more likely shot in the back, thereby refuting defendant's self-defense theory. This Court has previously recognized the appropriateness of admitting photographs in similar circumstances. See *People v Flowers*, 222 Mich App 732, 736; 565 NW2d 12 (1997) (no abuse of discretion to admit photographs which were referred to during the pathologist's testimony and "were instructive in depicting the nature and extent of the victim's injuries.") As the prosecution argues, photographs may be used to corroborate a witness's testimony. *Mills*, 450 Mich at 76.

Accordingly, the probative value of these photographs, which showed the jury that the victim was shot in the back, was not substantially outweighed by the danger of unfair prejudice. See MRE 403. See also *Mills*, 450 Mich at 78-79; *Coddington*, 188 Mich App at 598-599. Therefore, the trial court did not err by admitting the photographs. See *Duby*, 120 Mich App at 256-257.

## D. OFFENSE VARIABLE (OV) 6

Next, defendant argues that the trial court erred by assessing 25 points for OV 6.

We review de novo whether the trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). We review for clear error; however, a trial court's factual findings under the sentencing guidelines, and the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 6 addresses an offender's intent to kill or injure a person. MCL 777.36(1). The trial court properly assigns 25 points if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). Ten points are proper if "[t]he offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life." MCL 777.36(1)(c). Further, the trial court may assess 10 points if the "killing is intentional within the definition of second-degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(b). The trial court's assessment of points for OV 6 must be consistent with the jury verdict "unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

In this case, the jury found defendant guilty of second-degree murder, which required the jury to find that defendant had "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Aldrich*, 246 Mich App 101, 123; 631 NW2d 67 (2001). This same "intent to kill" warrants 25 points under OV 6. MCL 777.36(2)(a). The trial court noted during sentencing that it agreed with the verdict. Further, the trial court stated that there was no justification for defendant chasing the teenagers and shooting the victim in the back, thereby refuting a claim that defendant was acting with "adequate provocation and before a reasonable amount of time elapsed for the offender to calm," which would have warranted a lower score for OV 6. See MCL 777.36(1)(c).

Further, the trial court did not err by declining to find that defendant acted within a combative situation to support 10 points under MCL 777.36(2)(b). Defendant relies on *People v Rodriguez*, 212 Mich App 351, 353; 538 NW2d 42 (1995), in which this Court, when addressing OV 3, defined "combative as ready or inclined to fight; pugnacious." Here, witness testimony and other evidence suggested that defendant chased the teenagers after they exited the Honda. Even accepting the witnesses' testimony that the teenagers had guns and that the victim told another individual to shoot defendant, the trial court could have reasonably found that the facts of this case do not demonstrate that the victim was "ready or inclined to fight" when he and his friends exited the stolen Honda after defendant boxed them in. Therefore, the trial court did not abuse its discretion by assessing 25 points for OV 6.

## E. SENTENCE PROPORTIONALITY

Finally, defendant argues that his sentence was disproportionate.

We review for an abuse of discretion whether a trial court properly imposed a sentence that was proportionate to the offender and offense and whether the sentence was reasonable or violated the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 461; 902 NW2d 327 (2017). See also *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010).

Although the sentencing guidelines are advisory, the trial court must still "determine the applicable guidelines range and take it into account when imposing a sentence." *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). The guidelines "embody the principle of proportionality." *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017). Relevant considerations for determining whether a sentence is proportionate "include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. at 525. "[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. (quotation marks and citations omitted). A trial court should tailor its sentence to the circumstances of the offense and offender. See *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022).

Defendant's correctly scored sentencing guidelines range was 162 to 270 months' imprisonment for his second-degree murder of a teenager, shot in the back, while the teen was trying to run away. Defendant was sentenced to not less than 14 nor more than 40 years' imprisonment (168 to 480 months).

The imposed sentence was six months above the minimum within-guidelines sentence range. The total range within the guidelines for this offense was 108 months. This means the trial court sentenced defendant to the bottom 5.5% of the sentencing guidelines range. Stated another way, the imposed sentence was 94.5% *below* what any other authorized within-guidelines sentence could have been.

The trial court properly considered factors that included defendant's lack of criminal history and that the teenagers had stolen defendant's father's vehicle. The trial court also acknowledged that defendant was legally carrying a gun. Further, the trial court hoped that the case would deter young people in the community from stealing cars and encourage responsibility in concealed pistol license holders. The trial court found that defendant was "a good person" who "made a bad choice" but also stated that defendant shot "a 13-year old [sic] seventh grader in the back and killed him" without any justification. Although defendant argues that the wide guidelines range gave the trial court "no real guidance in sentencing [defendant], effectively leaving the court with unfettered discretion," the trial court clearly considered the circumstances of the offense and offender when sentencing defendant. See *Boykin*, 510 Mich at 183.

Further, defendant has not rebutted the presumption of proportionality of the within-guidelines sentence. See *Posey*, 512 Mich at 360. Defendant argues that the circumstances of this case justified a downward departing sentence. As defendant argues, he did not have a criminal history. This was taken into consideration in the sentencing guidelines and the trial court also considered that fact during the sentencing hearing. Although defendant also argues that a shorter sentence does not pose a danger to society and he acknowledges that his choice "cost a teen his

life," the trial court did not err by imposing its sentence when defendant chased a group of teenagers and killed the victim.

The trial court presided over the trial and, accordingly, heard the details of the case. The trial court also read over 40 letters in support of defendant. Defendant argues that a shorter sentence would still punish him and that a prison sentence does not effectively deter crime. The trial court appropriately sentenced defendant on the basis of the facts of this offense and offender when it sentenced defendant near the bottom of the sentencing guidelines. The imposed sentence is not disproportionate or violative of Michigan law.

Accordingly, defendant is not entitled to resentencing.

### III. CONCLUSION

For the reasons set forth above, we affirm the judgment and sentence.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense